FILED

11/15/2023

Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs November 7, 2023

**STATE OF TENNESSEE v. TAILOR JAMES SIMPSON**

**Appeal from the Circuit Court for Dyer County**
**No. 19-CR-56A, 18-CR-190      Mark L. Hayes, Judge**

_____

**No. W2022-01806-CCA-R3-CD**

_____

Defendant, Tailor James Simpson, appeals the trial court's order revoking his probationary sentence for aggravated burglary and possession of methamphetamine with the intent to sell or deliver. Following our review of the entire record and the briefs of the parties, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JILL BARTEE AYERS, J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN, P.J., and JOHN W. CAMPBELL, SR., J., joined.

Brennan M. Wingerter, Assistant Public Defender – Appellate Director, Nashville, Tennessee (on appeal), and Joseline R. Pugh, Assistant Public Defender (at revocation) for the appellant, Tailor James Simpson.

Jonathan Skrmetti, Attorney General and Reporter; Caroline Weldon, Assistant Attorney General; Danny Goodman, Jr., District Attorney General; and Lance Webb, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**Factual and Procedural Background**

On June 11, 2018, Defendant, Tailor James Simpson, was indicted for aggravated burglary and theft over $1,000 in case number 18-CR-190. A month later, he was indicted for possession of methamphetamine with intent to sell or deliver and possession of drug paraphernalia in case number 19-CR-56A. On July 20, 2021, Defendant entered a global plea agreement resolving both cases. Per the terms of the agreement, Defendant pled guilty

to aggravated burglary as charged in case 18-CR-190, and possession of methamphetamine with intent to sell or deliver as charged in case 19-CR-56A. The remaining charge in each indictment was dismissed.

Defendant received Range I Standard Offender sentences of three years for aggravated burglary and ten years for possession of methamphetamine with the intent to sell or deliver. The sentences were to run concurrently, with eleven months, twenty-nine days to serve and the balance on supervised probation. The trial court also ordered that Defendant could be furloughed to a long-term rehabilitation program for the balance of the first eleven months and twenty-nine days after completing one hundred and eighty days in the Dyer County Jail. On November 30, 2021, the trial court entered an order granting Defendant a furlough to enter Safe Harbor, a long-term residential treatment facility. The furlough order contained four conditions, including the following two conditions:

> The Defendant shall return immediately to the Dyer County Jail upon leaving the residential treatment program with Safe Harbor. If the Defendant successfully completes the treatment program, he will receive jail credit during the release period. If the Defendant fails to successfully complete the program with Safe Harbor he will receive no jail credit toward[] his sentence for the time spent in the program.

> If the Defendant fails to return to the Dyer County Jail immediately upon leaving the program, for whatever reason, he will be charged with "escape" or "failure to appear," which is punishable according to law. Violation of any other conditions set out herein may result in Defendant being immediately arrested, transferred to the penitentiary, loss of probation, and/or such other penalties as may be appropriate under the law.

A probation violation report and corresponding warrant for Defendant's arrest was filed on May 17, 2022, alleging that Defendant had violated his probation by absconding from supervision and testing positive for an illegal substance. The report specifically alleged that while enrolled at Safe Harbor, Defendant was fired from his job at Custom Foods and tested positive for marijuana. Safe Harbor released Defendant from its program and Defendant was given a one-way bus ticket back home to West Tennessee. Defendant failed to report to the probation office or the Dyer County Jail following his release from Safe Harbor. At a home check at Defendant's last known residence in Halls, Tennessee, Defendant's grandfather stated that Defendant did not live there. Defendant remained at large until his arrest in Dyer County on September 23, 2022.

At the probation revocation hearing, Jackie Lewis, Defendant's probation officer, testified that she took over Defendant's supervision from Darrell Smothers who reviewed

the rules of probation with Defendant after Defendant entered his plea and was taken into custody on July 20, 2021. Ms. Lewis was aware that Defendant had been given permission to enroll in a long-term rehabilitation facility. Defendant gained admission to Safe Harbor, located in Jefferson County, in East Tennessee, and was admitted on November 30, 2021. Ms. Lewis was informed that Safe Harbor discharged Defendant on February 28, 2022, because he was fired from his job and tested positive in a drug screen. He was reportedly given a one-way bus ticket home to West Tennessee. Ms. Lewis checked the Dyer County Jail but Defendant had not reported back to the jail as required.

On March 29, 2022, Ms. Lewis conducted a home visit at Defendant's last known address in Halls, Tennessee in Lauderdale County. After learning that Defendant was not there, Ms. Lewis then searched the NCIC database for another address for Defendant but none was found. Afterward, Ms. Lewis filed a violation report for absconding. She testified that Defendant had not reported to her or to the Office of Probation and Parole between the time Safe Harbor discharged him in February 2022 and when she filed the probation violation report in May 2022. She testified further that had he contacted the office, there would have been a notation in his file, but no notation existed to show any attempt by Defendant to report to the probation office or the county jail.

Todd Fawver, the sentence manager at the Dyer County Sheriff's Office and Jail, explained that he had access to the jail records, which included information on how and when inmates are brought into custody. Mr. Fawver testified that according to jail records, Defendant was arrested on September 23, 2022, in Dyer County, not at Safe Harbor in New Market, Tennessee.

Upon conclusion of the proof, the trial court found that Defendant had violated his probation by absconding, and ordered him to serve the balance of his sentence in custody. The trial court was clear to point out that it did not consider Defendant's failure at the treatment program as the basis for the violation. The trial court found it "very troublesome" that Defendant understood that he had to report in order to comply with the terms of probation "even if he failed at drug rehab" but simply failed to do so. The trial court entered a formal revocation order confirming its judgment from which Defendant filed a timely appeal.

**Analysis**

Defendant asserts that the trial court erred by revoking his probation and sentencing him to serve the balance of his ten-year sentence in confinement. Specifically, Defendant argues the trial court applied an incorrect standard by relying on his underlying convictions to impose incarceration. Defendant also argues that the trial court abused its discretion by finding that Defendant would not be successful on probation given that this was his first

probation violation. The State argues that the trial court properly revoked Defendant's probation after engaging in the requisite two-step analysis. We agree with the State.

A trial court's decision to revoke probation is reviewed for abuse of discretion with a presumption of reasonableness "so long as the trial court places sufficient findings and the reasons for its decisions as to the revocation and the consequence on the record." *State v. Dagnan*, 641 S.W.3d 751, 759 (Tenn. 2022). Generally, discretion is abused when the trial court applies "incorrect legal standards, reaches an illogical conclusion, bases its ruling on a clearly erroneous assessment of the proof, or applies reasoning that causes an injustice to the complaining party." *Id.* at 758 (quoting *State v. Phelps*, 329 S.W.3d 436, 443 (Tenn. 2010)).

A trial court must engage in a "two-step consideration" when determining whether to revoke a defendant's probation. "The first [step] is to determine whether to revoke probation, and the second is to determine the appropriate consequence upon revocation." *Dagnan*, 641 S.W.3d at 757. If a trial court finds by a preponderance of the evidence that a defendant violated his or her probation, then it is within the trial court's discretionary authority to revoke probation under the first step. T.C.A. § 40-35-311(e)(1), (2); *Dagnan*, 641 S.W.3d at 757, n.4; *State v. Beard*, 189 S.W.3d 730, 734-35 (Tenn. Crim. App. 2005).

In determining the appropriate consequence under the second step, a trial court may consider the nature and seriousness of the violation, the number of prior revocations, the defendant's criminal history, and amenability to continued probation. *Dagnan,* 641 S.W.3d at 759, n.5 ("consideration of past criminal history is only appropriate in the second part of the two-step analysis"). Factors relevant in demonstrating a defendant's amenability to continued probation include a defendant's acceptance of responsibility and expressions of genuine remorse, and the likelihood of complying with orders designed to further or accomplish a defendant's rehabilitation. *State v. Owens,* No. E2021-00814-CCA-R3-CD, 2022 WL 2387763, at *5 (Tenn. Crim. App. July 1, 2022) *no perm. app. filed*. "The primary purpose of probation sentence, however, 'is rehabilitation of the defendant,' and the conditions of probation must be suited to this purpose." *State v. Holmes*, No. M2020-01539-CCA-R3-CD, 2022 WL 2254422, at *16 (Tenn. Crim. App. June 23, 2022) *no. perm. app. filed* (quoting *State v. Burdin*, 924 S.W.2d 82, 86 (Tenn. 1996)).

"If the trial judge finds by a preponderance of the evidence that the defendant has violated the conditions of probation and suspension of sentence, then the court may revoke the defendant's probation and suspension of sentence, in full or in part, pursuant to § 40-35-310." T.C.A. § 40-35-311(d)(1). Among the options available to the trial court is the power to order the original judgment in full force and effect from the date of the revocation of probation or to resentence the defendant for the remainder of the unexpired sentence to

a sentence of probation including a community-based alternative, provided that the violation was a technical violation. *Id.* § 40-35-310(a), (b). Absconding from supervision is not a technical violation. *Id.* § 40-35-311(g); *State v. Munn,* No. W2022-00675-CCA-R3-CD, 2023 WL 2607676, at *4 (Tenn. Crim. App. Mar. 23, 2023) ("absconding is specifically excluded from technical violations, which include failure to report") *no perm. app. filed*.

In this case, the trial court engaged in the two-step *Dagnan* test when revoking Defendant's probation and ordering him to serve the balance of his sentence in confinement. First, the evidence supports the trial court's finding of a violation by absconding. On appeal, Defendant does not advance any argument or dispute the trial court's finding of a violation. Indeed, per the terms of the furlough order, Defendant was obligated to report to his probation officer, the probation office, or the Dyer County Jail within forty-eight hours of his release from the Safe Harbor program. He failed to do any of the three, and made no attempt to do so during the seven months of absconsion. Further, he did not return to the address he provided as his residence. We therefore affirm the trial court's finding that Defendant violated his probation.

Second, the trial court found the nature of the violation justified imprisonment because it reflected poorly on Defendant's amenability for future rehabilitation:

 [D]efendant, had he wanted to remain on probation, understood from the signing of that order, and, that order was signed by [D]efendant on July the 20th of 2021, what his obligations were in order to comply with the terms of continued probation even if he failed at drug rehab. That's not why [t]he Court has a problem with this case because we know statistically that most people are going to fail. And so, that's not the problem. The problem is [D]efendant failed to report, so nobody could keep up with him.

\*\*\*

I have looked at whether or not it reasonably appears that the defendant will abide by the terms of probation in the future. If past conduct is the measure, we don't have any expectations that he would abide by the terms of any probation in the future.

Defendant was informed of his obligation to report should he leave Safe Harbor, voluntary or otherwise. The furlough order bears Defendant's signature and confirms that he understood all four conditions of the furlough and the consequences of his failure to abide by those conditions. The trial court clearly stated that it was not relying on Defendant's termination from Safe Harbor in determining whether a violation had occurred

and what consequence should be imposed. Contrary to Defendant's assertion, it was not the "[o]ne failed attempt at rehab," which gave rise to the consequence of incarceration, but Defendant's undisputed failure to contact the probation office, his original probation officer, Mr. Smothers, or the Dyer County Jail for seven months following his release from Safe Harbor. It is this past conduct presented at the revocation hearing, that the trial court properly considered in determining Defendant's amenability for continued probation.

Defendant also claims the trial court applied the incorrect standard in determining the consequence of the violation, arguing that the trial court abused its discretion by considering deterrence as a reason for imposing incarceration for the violation. We agree with the State that the trial court's consideration of deterrence, while not required for the second step, did not constitute an abuse of discretion. The record plainly shows that the trial court considered both deterrence *and* Defendant's poor amenability for continued probation as reasons for ordering incarceration. *See State v. Summers*, M2001-01358-CCA-R3-CD, 2002 WL 1591721, at *2 (Tenn. Crim. App. July 19, 2002) (revocation affirmed based on the need to deter others from "los[ing] respect for the probation program" and other facts of the case including the defendant's repeated failures at past rehabilitation).

We are unpersuaded by Defendant's argument that the trial court abused its discretion by imposing a ten-year sentence of incarceration on a twenty-seven-year-old man for his first probation violation. There is no entitlement to probation once a violation has occurred. "[A]n accused, already on [a suspended sentence], is not entitled to a second grant of probation or another form of alternative sentencing." *State v. Warfield*, No. 01C01-9711-CC-00504, 1999 WL 61065, at *2 (Tenn. Crim. App. Feb. 10, 1999). "Only one basis for revocation is necessary." *State v. Chatman*, No. E2000-03123-CCA-R3-CD, 2001 WL 1173895, at *2 (Tenn. Crim. App, Oct. 5, 2001). Accordingly, we affirm the trial court's decision to impose incarceration as a consequence of the probation violation.

Based on the record, we conclude that the trial court did not abuse its discretion in finding that Defendant violated his probationary sentence, or in revoking Defendant's probation and ordering him to serve the balance of his sentence in custody. He is not entitled to relief.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court.

_____

JILL BARTEE AYERS, JUDGE